*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2212**

Scott David Silver, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent

**Filed July 28, 2014
Affirmed
Ross, Judge**

Hennepin County District Court
File No. 27-CV-13-3024

Steven J. Meshbesher, David R. Lundgren, Kevin M. Gregorius, Adam T. Johnson, Meshbesher & Associates, PA, Minneapolis, Minnesota (for appellant)

Lori Swanson, Attorney General, Rory Mattson, Assistant Attorney General, Joseph Simmer, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Ross, Presiding Judge; Bjorkman, Judge; and Huspeni, Judge.[*]

**U N P U B L I S H E D   O P I N I O N**

**ROSS**, Judge

The state charged Scott Silver with driving while impaired after police stopped the car he was driving and administered a breath test that revealed an alcohol concentration above the per se intoxication limit. The commissioner of public safety revoked Silver's

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

driving privileges. Silver unsuccessfully petitioned the district court to rescind the revocation. Because Silver voluntarily consented to the breath test, we affirm.

## FACTS

Hopkins Police Officer Jessica Thomas stopped a speeding car that Scott Silver was driving. Officer Thomas noticed that Silver had watery, bloodshot eyes and smelled of alcoholic beverages. She asked Silver to perform field sobriety tests, and the tests informed her that he was intoxicated. She administered a preliminary breath test, indicating a .106 alcohol concentration. Officer Thomas arrested Silver.

The officer took Silver to the police station and read him the implied consent advisory. Silver indicated that he wanted to call an attorney, so Officer Thomas gave him a cellular telephone, a phone book, and access to another phone. Silver dialed his attorney's number, but the attorney did not answer or call back within 30 minutes. Officer Thomas then ended Silver's phone access and asked if he would take a breath test. Silver said he would, and his test indicated an alcohol concentration of .10. The commissioner of public safety revoked Silver's driving privileges.

Silver petitioned for judicial review of the commissioner's decision, raising numerous arguments. The district court rejected them all, sustaining the revocation. Silver appeals.

## D E C I S I O N

Silver argues that his breath test results should have been suppressed because he was coerced into taking the test, resulting in a violation of his constitutional rights. We review revocation challenges based on alleged constitutional violations de novo.

*Harrison v. Comm'r of Pub. Safety*, 781 N.W.2d 918, 920 (Minn. App. 2010). The federal and state constitutions protect citizens against unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. A breath test is a search. *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 616–17, 109 S. Ct. 1402, 1413 (1989). Police searches conducted without a warrant are unreasonable unless an exception to the warrant requirement applies. *State v. Flowers*, 734 N.W.2d 239, 248 (Minn. 2007). Consent is an exception to the warrant requirement, but the state must prove that the defendant consented voluntarily. *State v. Diede*, 795 N.W.2d 836, 846 (Minn. 2011). We examine the totality of the circumstances to decide whether the defendant's consent was voluntary. *State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013), *cert denied*, 134 S. Ct. 1799 (2014).

Silver maintains that "two of the foremost" factors establishing voluntariness in *Brooks* are absent here. The first, he argues, is "clear communication that [he]could effectively withhold his consent to testing." But Silver is wrong as a matter of fact because police communication indicating the right to withhold consent was the same here as it was in *Brooks*. The *Brooks* court reasoned that "by reading Brooks the implied consent advisory police made clear to him that he had a choice of whether to submit to testing." *Id.* at 572. Likewise here, by reading Silver the implied consent advisory police made clear to him that he had a choice of whether to submit to testing.

The second of the "foremost" factors that Silver says distinguishes this case from *Brooks* is that Brooks consulted with an attorney and Silver did not. But the *Brooks* court analyzes the attorney call this way: "The fact that Brooks consulted with counsel before agreeing to take each test *reinforces* the conclusion that his consent was not illegally

3

coerced." *Id*. at 571 (emphasis added). The term "reinforces" in context suggests that the supreme court had already come to its conclusion and would not have decided differently even if Brooks had not consulted with counsel. The court reasoned, it is "the ability to consult with counsel about an issue" that makes a subsequent decision more likely to be voluntary. *Id*. at 572. Silver, like Brooks, had "the ability to" contact an attorney before agreeing to testing. That he tried unsuccessfully to reach an attorney and then agreed to the test anyway does not suggest involuntariness or coercion.

Silver highlights other factors, but none indicates that his will was overborne or that he was pressured beyond his capacity to refuse the test. He points out that he was in police custody when he was asked to take the test, that police had driven him to the police department, and that he was subject to their direction. He adds that the advisory told him he was required to take a test and that refusal is a crime. And he points out that he was never advised that he would not be forced to submit to a test if he refused. In none of this has he identified anything to distinguish his circumstances from those the supreme court considered in *Brooks*. Although he asserts that "there are significant differences between him and Mr. Brooks," he identifies none except that Brooks was combative and had a significant history with drunk driving offenses. We do not see these two factors as significant. More important, Silver identifies nothing that the officer did or said that would suggest coercion; like Brooks, he relies mostly on the theoretical force of the threat of prosecution for refusing. But although this threat may in one sense be coercive, *Brooks* teaches that it cannot alone support a finding of unconstitutional coercion.

**Affirmed.**

4